UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
MARTHA GONZALEZ,

        Plaintiff,

        -against-

UNITED STATES OF AMERICA,

        Defendant.
------------------------------------------------------------------x

**MEMORANDUM & ORDER**
2:22-CV-3370 (OEM) (JMW)

**ORELIA E. MERCHANT, United States District Judge:**

      Defendant United States of America (the "Government") seeks review of Magistrate Judge James M. Wicks' ("MJ Wicks") non-dispositive discovery order (the "Order") dated May 15, 2023 denying the Government's motion to compel responses from Martha Gonzalez ("Martha") and Boris Gonzalez ("Boris") to the interrogatories propounded separately upon each of them. Specifically, the Government objects to MJ Wicks' finding that under the circumstances presented, the counterclaim defendants in this action, Martha and Boris Gonzalez, "should be treated as one party for purposes of Rule 33(a)," and consequently, limiting the number of interrogatories that may be served on Martha and Boris to 25 requests altogether. *See Gonzalez v. United States*, No. 22-CV-3370 (NRM) (JMW), 2023 WL 3455059, at *5 (E.D.N.Y. May 15, 2023). Because the Court does not find the Order clearly erroneous or contrary to law, MJ Wick's Order is AFFIRMED. *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a).

## BACKGROUND

### A. Relevant Facts

      The Court assumes familiarity with the underlying facts in this case which are set out more fully in the Order. The relevant facts below are undisputed unless otherwise noted.

In or around 2011, Martha and her husband, Boris, operated a construction company together called Camabo Industries, Inc. ("Camabo"). Martha was the sole shareholder of Camabo, and Boris acted as the CEO. Complaint ("Compl."), ECF 1, ¶¶ 1-2, 10-11. After Camabo purportedly failed to pay certain employment taxes in or around 2012 and 2013, the Internal Revenue Service ("IRS") assessed a tax liability and subsequent penalties on Camabo, which Martha disputes she is responsible for under 26 U.S.C. § 6672. *Gonzalez*, 2023 WL 3455059, at *1. This is a position Martha has maintained since around 2014. Compl. ¶ 15-16. Ultimately, in June 2017, a lien was filed against Martha in the amount of $1,366,796.72 and the amount due has grown since then. Compl. ¶¶ 18, 29. Martha eventually sought judicial relief from the underlying IRS assessment proceeding in this Court and sued the Government for a "refund and abatement of federal taxes, penalties and interest, and for the release of liens." *See* Compl. ¶¶ 1, 30-37.

The Government responded to Martha's suit by impleading Boris into the action and levying their own counterclaims against Boris and Martha together to collect outstanding liabilities for penalties under 26 U.S.C. § 6672. *See* Government's Answer to Complaint and Counterclaim Against Martha Gonzalez and Boris Gonzalez, ECF 15.[1] The Counterclaim contained various allegations as to Boris' connection and involvement in Camabo including that "Martha Gonzalez and Boris Gonzalez were co-debtors with regard to certain liabilities of Camabo[.]" Counterclaim ¶¶ 40-49. Along with Martha, the Government sought "judgment against the counterclaim defendant Boris Gonzalez under 26 U.S.C. § 6672 regarding the wages of employees of Camabo" for the periods at issue. Counterclaim, Prayer for Relief ¶ C.

---

[1] While the Answer and Counterclaim were submitted as one document, ECF 15, the Court's citation to specific paragraphs here tracks those paragraphs as numbered in Answer portion of the document ("Answer") or paragraphs alleged in the counterclaim portion of the document ("Counterclaim").

2

During fact discovery, the Government separately propounded 19 interrogatories on Martha and 25 interrogatories on Boris. *See* Government's Appeal of the Order ("Gov't App."), ECF 30, at 2. Martha and Boris resisted answering these interrogatories and maintained that they together should be treated as a single party for discovery purposes because they shared a "common interest" in the litigation. *Id. See* Gonzalez Letter dated Feb. 6, 2023, ("Gonzalez Ltr."), ECF 25-5, at 1 (citing *Zito v. Leasecomm Corp.*, 233 F.R.D. 395, 399 (S.D.N.Y. 2006)). The Government disagreed with this argument then as it does now. *See* Government's Objection Letter dated Feb. 9, 2023, ECF 25-6, at 2. On March 7, 2023, it filed a letter motion to compel interrogatory responses from both Martha and Boris, claiming that in relevant part "[t]he United States' revised interrogatories do not exceed 25 per party as permitted by Fed. R. Civ. P. 33(a)(1)" because "Martha and Boris are separate parties" and "[t]he United States requested information separately because the determination of whether each party, distinct from any other, is responsible and willful involves a determination of the level of control each had over Camabo[.]" Government's Motion to Compel ("Mot. to Compel"), ECF 25, at 3. On March 13, 2023, Martha and Boris jointly filed a letter motion in opposition, Gonzalez' Opposition to Motion to Compel ("Gonzalez' Opp."), ECF 26; and on April 15, 2023, MJ Wicks issued the Order denying the motion to compel.

On May 26, 2023, the Government appealed MJ Wicks' Order to the undersigned. Gov't App. Specifically, the Government objects to that portion of the MJ Wick's Order finding that Martha and Boris should be considered together as one party such that only 25 interrogatories were allowed to be served, *see id.* at 3-4, and Martha and Boris opposed this appeal in a letter brief filed June 12, 2023. *See* Gonzalez' Response to Appeal ("Gonzalez Response"), ECF 31.

3

### B. The Order

In the Order, MJ Wicks concluded that "Martha and Boris should be treated as one party because of the nature of their connections to this case. As such, [the Government] is limited to a total of 25 interrogatories to be propounded on both [Martha and Boris]." *Gonzalez*, 2023 WL 3455059, at *5. In reaching this conclusion, MJ Wicks followed the reasoning of discovery decisions by judges in this District and other district courts in this Circuit which found that "nominally separate parties should be considered one party for purposes of the 25-interrogatory limitation." *Zito*, 233 F.R.D. at 399 (quoting Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2168.1 at 261 (2d ed.1994) (hereinafter "Wright & Miller")). *See Gonzalez*, 2023 WL 3455059, at *5 (citing *Zito* and *Liberty Mut. Ins. Co. v. Blessinger*, No. CV 06-391 (NGG) (ARL), 2007 U.S. Dist. LEXIS 45961, at *5 (E.D.N.Y. June 25, 2007)).

> MJ Wicks reasoned that, under the circumstances presented, Boris and Martha:
>
> [s]hould be treated as one party for purposes of Rule 33(a). There is clearly a common interest shared in light of the allegations of the counterclaims, and their representation by the same attorney is further support. Indeed, other courts have found such similarities. *See McCarthy v. Paine Webber Grp., Inc.*, 168 F.R.D. 448, 450 (D. Conn. 1996) (applying the limit to each 'side' rather than to each 'party' because all defendants were represented by the same law firm and filed and responded to all motions jointly); *Stiles v. Walmart,* No. 2:14-CV-2234-MCE-DMC, 2020 WL 264420, at *4 (E.D. Cal. Jan. 17, 2020) ("Where separate parties are represented by the same counsel and are acting in unison, they may be treated as one 'party' for purposes of the limit on interrogatories.").

*Id.* (footnote omitted).

After finding that Boris and Martha were together a "party" for interrogatory purposes under Rule 33(a)(1), MJ Wicks opined that the Government:

> has not made a "particularized showing" to the Court that there is a need for these excessive interrogatories. It has not provided proposed interrogatories for the Court's review, nor has it demonstrated that [Martha and Boris] are the only individuals with this information. Nor has [the Government] shown that the benefits of the interrogatories would outweigh any burden to [Martha and Boris]. Indeed, presumably both [Martha and Boris] will be questioned at depositions. Thus, the Court finds that Martha and Boris should be treated as one party because of the nature of their connections to this case. As such, [the Government] is limited to a total of 25 interrogatories to be propounded on both [Martha and Boris].

*Id.*

## STANDARD OF REVIEW

A magistrate judge may issue orders regarding non-dispositive pretrial matters. Fed. R. Civ. P. 72(a). Discovery orders are generally considered non-dispositive orders. *See Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990). The district court reviews such orders under the "clearly erroneous or contrary to law" standard which is akin to a "abuse of discretion standard."[2] *See id.*; 28 U.S.C. § 636(b)(1)(A); *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 117 (2d Cir. 2010) ("*Arista*").

Under the "contrary to law" standard of review, a district court may reverse a finding only if it finds that the magistrate "failed to apply or misapplied relevant statutes, case law or rules of procedure."[3] *Garcia v. Benjamin Grp. Enter. Inc.*, 800 F. Supp. 2d 399, 403 (E.D.N.Y. 2011). An abuse of discretion may also occur where the court's "decision—though not necessarily the product of a legal error or a clearly erroneous factual finding—cannot be located within the range

---

[2] As the Second Circuit has "frequently pointed out[,] the term 'abuse' of discretion is an unfortunate misnomer. Despite its harsh connotations, it is substantively 'a nonpejorative term of art' that 'implies no misconduct on the part of the district court.'" *United States v. Nieves*, 58 F.4th 623, 632 (2d Cir. 2023) (quoting *United States v. Bove,* 888 F.3d 606, 607 n.1 (2d Cir. 2018)).

[3] As the Government only appeals the Order as being contrary to law, the Court only addresses the Order under this standard. *See* Gov't App. at 1, 4.

5

of permissible decisions." *Arista,* 604 F.3d at 117 (internal citation omitted). "Under this highly deferential standard of review, a district court may reverse the order only if 'on the entire evidence,' the district court is 'left with the definite and firm conviction that a mistake has been committed.'" *Gedeon v. Valucare, Inc.*, No. 19-CV-6954(JS)(AKT), 2021 WL 135722, at *1 (E.D.N.Y. Jan. 14, 2021) (quoting *Gray v. City of New York*, No. 10-CV-3039, 2013 WL 3093345, at *2 (E.D.N.Y. June 18, 2013)). "[A] party seeking to overturn a discovery order bears a heavy burden." *Id.* (quoting *AP Links, LLC v. Global Golf, Inc.,* No. 08-CV-1730, 2011 WL 888261, at *4 (E.D.N.Y. Mar. 14, 2011)).

## DISCUSSION

The Government argues that the plain language of Rule 33(a)(1) of the Federal Rules of Civil Procedure (the "Rules") controls, and that the Government is entitled to served up to 25 interrogatories upon any party. *See* Gov't App. at 2-3. Rule 33(a)(1) provides that "[u]nless otherwise stipulated or ordered by the court, a party may serve on another party no more than 25 written interrogatories, including all discrete subparts. Leave to serve additional interrogatories may be granted to the extent consistent with Rule 26(b)(1) and (2)." Fed. R. Civ. P. 33(a)(1).

The Government contends that as Martha and Boris are each plainly a discrete party to this action (a fact no one here disputes), the Government should be allowed to propound upon them 25 interrogatories each and that the Order thus "misapplied" Rule 33(a)(1) when it limited the Government to propounding only 25 between them both. Gov't App. at 2-3. Martha and Boris contend that, notwithstanding a literal reading of the Rule, the Order's application of a so-called

6

"common interest" doctrine was not impermissible as a matter of law or in their circumstances.[4] Gonzalez Response at 1.

Upon review of the Order, and for the reasons explained below, the Court finds that MJ Wicks did not misapply the law or the Rules or otherwise abused his discretion when applying the so-called Rule 33(a) "common-interest" doctrine to find that Martha and Boris should be considered together as one party for the purposes of interrogatory discovery in this action.[5]

A.  **Principles in Construing the Federal Rules of Civil Procedure**

The Rules, like statutes, should generally be accorded their plain meaning from their plain text. *See Bus. Guides, Inc. v. Chromatic Commc'ns Enterprises, Inc.*, 498 U.S. 533, 540 (1991) ("We give the [Rules] their plain meaning.") ("*Chromatic*"); *accord Silge v. Merz*, 510 F.3d 157, 160 (2d Cir. 2007). But, akin to statutes, federal courts may be called upon to construe terms in the Rules that may be ambiguous or that otherwise may be unambiguous on their face but may, in certain situations, produce unintended, unfair, or "unnatural" results. *Chromatic*, 498 U.S. at 544. In such cases, a court looks not only to the "plain text" of the rule in full context but also the Rule's "language and purpose." *Id.* at 542-48.[6] *See Silge*, 510 F.3d at 159 ("Given the clear language and purpose of the rule, we find no fault with the district court's determination.") (examining

---

[4] The Court notes that Martha and Boris's letter brief does not address the Government's text-based objection.
[5] There is no objection here on the grounds that MJ Wicks failed to apply the relevant law at all, *i.e.*, Rule 33, which he did, or that MJ Wicks failed to apply or misapplied controlling law, *i.e.*, the Order was contrary to some set precedent established by the Second Circuit or the Supreme Court. At its core, the objection is grounded in two competing views of a term in Rule 33(a)(1).
[6] For example, in *Chromatic*, the Supreme Court was called to determine whether Rule 11's provision of sanctions also applied to the represented parties in the action and not just lawyers or unrepresented parties. *See generally id.* In holding that sanctions may be imposed on "represented parties" as well as attorneys who sign papers submitted to a federal court, the Supreme Court examined Rule 11's full text as well its language and purpose. *Id.* at 542-48. (finding "no reason why a district court should be powerless to sanction the party in addition to, or instead of, the attorney.").

Wright & Miller for "the purpose of the distinction made in the rule between default judgments and contested judgments" in Rule 54(c)).

However, in the discovery context, the Supreme Court has stated that "the [Rules] should be liberally construed, but they should not be expanded by disregarding plainly expressed limitations."[7] *Schlagenhauf v. Holder*, 379 U.S. 104, 121, (1964) (concluding that Rule 35's mental examination discovery device applied to both plaintiffs and defendants). *See id.* at 114 (quoting *Hickman v. Taylor*, 329 U.S. 495, 501, 507 (1947)) ("There remains the issue of the construction of Rule 35. We enter upon determination of this construction with the basic premise 'that the deposition-*discovery* rules are to be accorded a broad and liberal treatment.'"); *accord Herbert v. Lando*, 441 U.S. 153, 177 (1979); *Ratliff v. Davis Polk & Wardwell*, 354 F.3d 165, 170 (2d Cir. 2003).

Indeed, the Rules themselves indicate that there is more play in their joints: the Rules' express purpose states that they "should be *construed*, administered, and *employed by the court* and the parties to secure the just, *speedy*, and *inexpensive* determination of every action and proceeding." Fed. R. Civ. P. 1. (emphasis added).  Further, the Supreme Court has noted that the Rules themselves provide no textual authority for several "other standard procedural devices trial courts around the country use every day" such as "the power of a judge to hear a motion *in limine*, [or] a motion to dismiss for *forum non conveniens*," yet federal courts are nonetheless empowered to use them "in service of Rule 1's paramount command: the just, speedy, and inexpensive resolution of disputes." *Dietz v. Bouldin*, 579 U.S. 40, 45 (2016).

---

[7] There is no argument here that the application of the common interest doctrine is an expansion of substantive rights. Rather, the Government challenges the judge's discretionary choice to *limit* the amount of interrogatories.

Given this authority and the percolation of other persuasive opinions finding otherwise, *see infra* Part B, the Court does not find that Rule 33(a)(1)'s text requires such a strict interpretation of "each party" as the Government suggests so long as "the scope of Rule 33 [is not expanded] beyond its textual limits." *United States v. Owen*, 500 F.3d 83, 90 (2d Cir. 2007). As explained below, the so-called "common interest" doctrine is not a substantive expansion of Rule 33(a)(1)'s text but rather a judge-made procedural device that further allows a trial judge, under the ambit of her already wide discretionary powers in discovery, to effectively manage interrogatory practice in multi-party cases by setting limits on interrogatories in treating several nominal litigants as a single "party" under the Rule and only when certain indicia are present in the facts of the given case. This abides by the well-settled principle that "discovery, like all matters of procedure, has ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)) (internal quotations omitted). The power to draw the contours of these boundaries and streamline discovery has long been the province of the district judge's discretion. *See Crawford-El v. Britton,* 523 U.S. 574, 598 (1998) (Under Rule 26, trial judge vested "with broad discretion to tailor discovery narrowly and to dictate the sequence of discovery . . . [and] upon motion the court may limit the time, place, and manner of discovery, or even bar discovery altogether on certain subjects"); *B.F. Goodrich v. Betkoski*, 99 F.3d 505, 523 (2d Cir. 1996) (overruled on other grounds) ("In complex multi-party litigation, a trial court often needs to use its broad authority to control discovery. Some of the measures adopted here, such as time limits, schedules for discovery, and limitations on deposition discovery, have been specifically recommended as acceptable options."); *Wills v. Amerada Hess Corp.*, 379 F.3d 32, 41 (2d Cir. 2004) ("Recognizing the district court's broad discretion to direct and manage

9

the pre-trial discovery process, we also review a district court's discovery rulings for abuse of discretion."). *See also Dietz*, 579 U.S. at 47 ("This Court has also held that district courts have the *inherent authority* to manage their dockets and courtrooms with a view toward the *efficient and expedient resolution* of cases.") (emphasis added); *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 756 F.2d 230, 236 (2d Cir. 1985) ("Discovery serves important purposes, such as . . . narrowing, simplifying, and framing the issues involved . . . ").

### B.      Common Interest Doctrine under Rule 33(a)(1)

With these precepts in mind, the Court briefly takes in the precedential landscape regarding Rule 33(a)(1). Here, as the Second Circuit and Supreme Court have yet to speak on how strictly or liberally lower courts should adhere to the term "party" as used in Rule 33(a), district courts in the Second Circuit dealing with discovery issues involving Rule 33 interrogatories have had occasion to address the issue in some manner going as far back as at least 1996. *See, e.g.*, *McCarthy v. Paine Webber Grp., Inc.*, 168 F.R.D. 448, 450 (D. Conn. 1996) (rejecting a literal "each party" reading as "disingenuous" given the facts of the case because "all defendants have been represented by the same law firm since May 1993, and have jointly filed and responded to all motions since that time"). This general line of reasoning in the interrogatory context has since continued to develop. *See Gucci Am., Inc. v. Exclusive Imports Int'l*, No. 99-cv-11490 (RCC) (FM), 2002 WL 1870293, at *5 (S.D.N.Y. Aug. 13, 2002) ("*Gucci*"). For example, in *Gucci*, the district court rejected defendants' contention that they were "entitled to serve 150 interrogatories because there are six defendants in this action." *Id.* In finding that the magistrate judge had "properly exercised his discretion to put an end to an already extensive discovery period," the court echoed the proposition that "where, as here, the parties are acting in unison and are represented by

10

the same counsel, they may be treated as one party for purposes of the interrogatory limit." *Id.* (citing Wright & Miller, § 2168.1). Similarly, in *In re Indep. Energy Holdings Secs. Litig.*, the court also abstained from a literal "each party" reading of Rule 33 and instead credited the interpretation that where the parties are "joint or aligned" they are "entitled to only 25 interrogatories." No. 00-cv-6689(SAS)(MHD), 2003 WL 42010, at *1 (S.D.N.Y. Jan. 6, 2003) (citing *Gucci*, 2002 WL 1870293, *5).

Perhaps the central of these "common interest" cases in this Circuit is *Zito*, a case relied upon by Martha and Boris throughout the litigation and cited in the Order itself. *See Gonzalez*, 2023 WL 3455059, at *5; *see also* Gov't Opp. at 3 (addressing the Government's objections to *Zito*'s application). In *Zito*, 200 individual plaintiffs brought a civil RICO action and, once in discovery, sought to avoid further individualized responses to the defendants' single set of 169 interrogatories after having responded together as a bloc with a single set of responses. 233 F.R.D. at 396-97, 398-99. After acknowledging that one other out-of-circuit district court had read Rule 33(a) "literally," the *Zito* court rejected this interpretation and indicated that "[a] more sensible approach" would be proper:

> The limitation on number of depositions ... speaks in terms of "sides" rather than parties. Because it frequently happens that a number of parties on the same side are represented by a single attorney and in that sense act in unison, this concept might be attractive in the interrogatory setting as well. In instances of legally related parties such as a parent corporation and its subsidiary, this could be particularly attractive. But the basic problem is more widespread. Consider, for example, a situation in which ten people injured in a bus crash sue the bus company in a single suit represented by the same lawyer. Should they be considered one party or ten for purposes of the interrogatory limitation? The best result would seem to be to recognize that in some instances nominally separate parties should be considered one party for purposes of the 25-interrogatory limitation.

11

233 F.R.D. at 399 (first quoting *St. Paul Fire and Marine Insurance Co. v. Birch, Stewart, Kolasch & Birch, LLP,* 217 F.R.D. 288, 289 (D. Mass. 2003), then quoting Wright & Miller, § 2168.1 at 261).

The *Zito* court then noted that applying a literal reading in the case before it would entitle [plaintiffs] "to propound more than 5,000 interrogatories." *Id.* Nonetheless, the magistrate judge declined to definitively "decide . . . whether the plain language of Rule 33(a) must be strictly applied in all circumstances. In this case, even if the interrogatories do not exceed the number permitted by rule, they are abusive." *Id.* (limiting individual interrogatories instead under the authority of Rule 26(b)(2)).

Other courts in this district, Circuit, and beyond have since agglomerated to the more liberal "sensible" construction of Rule 33(a) allowing them to make individualized decisions as to interrogatory limits given the specific facts of the litigation they are tasked to shepherd through discovery. *See, e.g.*, *Liberty Mut. Ins. Co. v. Blessinger*, No. CV 06-391 (NGG) (ARL), 2007 U.S. Dist. LEXIS 45961, at *5 (E.D.N.Y. June 25, 2007) (citing *Zito*, *Gucci Am.*, and *Energy Holdings*) (instructing parties to meet and confer on the interrogatory issue); *Rahman v. Smith & Wollensky Rest. Grp., Inc.*, No. 06 CIV 6198 (LAK) (JCF), 2007 WL 1521117, at *8 n.8 (S.D.N.Y. May 24, 2007) (citing *Energy Holdings*, 2003 WL 42010, at *1) ("However, the decision to consider multiple parties as one for the purposes of Rule 33(a) is within the discretion of the court."); *United States ex rel. Woodruff v. Hawai'i Pac. Health*, No. 05-cv-00521 (JMS) (LEK), 2008 WL 11420075, at *3 (D. Haw. Feb. 29, 2008) ("This Court finds the reasoning in *Zito* to be persuasive. Under the circumstances of this case, the two Plaintiffs are nominally separate parties, as are the three Defendants."); *Stiles v. Walmart*, No. 2:14-CV-2234-MCE-DMC, 2020 WL 264420, at *4

(E.D. Cal. Jan. 17, 2020) (citing *Gucci Am.*, 2002 WL 1870293 at *16-17) ("Where separate parties are represented by the same counsel and are acting in unison, they may be treated as one 'party' for purposes of the limit on interrogatories."); *Vinton v. Adam Aircraft Indus., Inc.*, 232 F.R.D. 650, 664 (D. Colo. 2005) (quoting Wright & Miller § 2168.1) ("However, commentators on Rule 33 have expressed a belief that 'in some instances nominally separate parties should be considered one party for purposes of the 25–interrogatory limitation.' . . . Here, the Plaintiff has taken the position that AAI and Defendant Adam are alter egos, and, in essence, should be treated as a single, unified entity. In such circumstances, the Court cannot say that the Magistrate Judge abused his discretion in limiting the Plaintiff to 25 interrogatories in total."); *Freedom Found. V. Sacks*, No. 3:19-CV-05937-RBL, 2020 WL 1914902, at *3 (W.D. Wash. Apr. 20, 2020) (citing *Zito*, 233 F.R.D. at 399) ("While Rule 33(a)(1) allows up to 25 interrogatories to be served upon each party, some courts have observed that multiple parties on the same side may be treated as one if they are only 'nominally separate.'"). *But see Adlerstein v. United States Customs & Border Prot.*, 342 F.R.D. 269, 271 (D. Ariz. 2022) (acknowledging *Zito*'s "sensible approach" but siding with a strict "plain language" interpretation).

In review of the available persuasive authority and absent any controlling authority to the contrary, the more flexible "common interest" approach advocated by our sister court in *Zito* is a fair and permissible interpretation of Rule 33(a)(1) so long as its application is driven by the needs of the case and applied in a case-specific manner. That is, where parties to a litigation have conducted themselves or acted as if they have a "common interest" or are otherwise "aligned," Courts have considered them as one "party" for Rule 33(a) purposes and should be allowed to do so despite being "nominally separate." *See Zito*, 233 F.R.D. at 398-99; *Gucci*, 2002 WL 1870293,

13

at *5; *Energy Holdings*, 2003 WL 42010, at *1. Such a "common interest" may be found where the parties are, *inter alia*, on the same side of the litigation; are represented by a single attorney; respond or propound demands as a unit or bloc in discovery or otherwise "act in unison"; whether they "present [ ] a uniform position" on a legal issue or are otherwise "aligned." *See Energy Holdings*, 2003 WL 42010, at *1; *Zito*, 233 F.R.D. at 398-99; *Gucci*, 2002 WL 1870293, at *5. This is a non-exhaustive list of indicia and any determination rests in the sound discretion of the trial judge overseeing discovery who will have the most familiarity with the litigants and the issues and who can best smoke out any potential for abuse or gamesmanship. *See Gordon v. Target Corp.*, 318 F.R.D. 242, 246 (E.D.N.Y. 2016) ("Discovery is not a matter of gamesmanship nor conducted like a game of chess."); *Bogan v. Nw. Mut. Life Ins. Co.*, 144 F.R.D. 51, 53 (S.D.N.Y. 1992) ("The Magistrate Judge, having conducted lengthy conferences with the parties in an effort to resolve discovery disputes, was in the best position to have the proper feel for the appropriate resolution of the problem presented by the [discovery issue], and unless clearly unreasonable, the Magistrate Judge's ruling on points of this type should be upheld").

The Government argues that Martha and Boris could not have a "common interest" as a "matter of law" because the substantive tax assessment statute, 26 U.S.C. § 6672, allows for each individual to be potentially found liable as a "responsible person" under the statute and thus "[t]he determination that Martha is liable for the [taxes] assessed against her would not resolve the determination of whether Boris is liable and vice versa." Gov't App. at 3-4. Further, the Government argues that "Martha and Boris do not share common interests as defendants in this case [they], cannot be treated as the same defendant." *Id.* at 4. Boris and Martha counter that the potential of several liability under the substantive law at issue has never been a precondition for

14

considering whether two nominal parties may be considered one under the available common interest doctrine caselaw and that they have always both denied liability and shared counsel. *See* Gonzalez Response at 2.

First, to the extent the Government's argument suggests that a potential for several liability may undercut any argument for treating nominal parties as a single party and cautions against too liberal an application of the common interest doctrine such that the substantive right to investigate and make one's case or defense under the relevant cause of action be curtailed, that is not disputed. *See* Gov't App. at 3-4. *Cf. Doe v. Del Rio,* 241 F.R.D. 154, 156 n.3 (S.D.N.Y. 2006) ("It is not disputed in the instant case that the plaintiffs possess a substantive right to pursue their claims against defendants."). But the potential for several liability alone is not sufficient to defeat a common interest claim otherwise a trial judge would be divested of her discretionary ability her ability to tailor interrogatory discovery just by the presence of certain claims or allegations dividing parties' shares of potential liability. Again, courts have stressed that it the litigation conduct of the nominal parties that should control inquiry. *See, e.g.*, *Stiles*, 2020 WL 264420, at *5.

Second, as the Government points out, many parties to a "side" of a litigation will have at least some minimal amount of common interest in their position being vindicated in the discovery phase prior to summary judgment–either by avoiding liability or otherwise securing a favorable judgment. Gov't App. at 3 (arguing two tortfeasors should "not share a common interest [for Rule 33 purposes] just because they both presumably wish to be found not liable."). The Court agrees that nominal parties' mere alignment on a case's favorable outcome is not, in itself, "sufficient" to demonstrate a "common interest" otherwise lest the text of Rule 33 be rendered meaningless. But

15

this was not the case here given Martha and Boris's joint representation, the "allegations of the counterclaims" and the record before MJ Wicks. *Gonzalez*, 2023 WL 3455059, at *5.

In any event, the Court need not opine further to the boundaries of the doctrine here. The common interest doctrine is ultimately a narrow one cabined to the realm of interrogatories. Its purpose is to allow a trial judge in discovery to manage and streamline the scope of interrogatory practice by identifying scenarios in which nominal parties can and should be treated as one. The Government's own Counterclaim treated Martha and Boris as one entity, co-debtors liable for taxes allegedly unpaid by Camabo. *See* Counterclaim ¶¶ 40-49 ("Martha Gonzalez and Boris Gonzalez were co-debtors with regard to certain liabilities of Camabo[.]"). Even assuming that both, either, or neither Martha and Boris were individually liable under 28 U.S.C. § 6672, the Government chose to rest on the pure text of Rule 33 and its belief that several liability was dispositive in this context, despite raised caselaw around the common interest doctrine; it did not seek to further challenge Martha and Boris's purported commonality on any other ground.

Further, a party opposing a common interest application is not without recourse. Like the Government here, it may object or appeal. An application of the common interest doctrine in a litigation does not preclude the Government from making its case against each individual party in other forms of discovery such as depositions or even seeking leave to serve more interrogatories as to each party subsequent to deposition or disclosure of new and relevant information. *See* Fed. R. Civ. P. 33(a)(1). Here, the Government chose not to separately seek leave to serve further interrogatories or otherwise to disclose the interrogatories to MJ Wicks to demonstrate their position.

Moreover, the Advisory Committee's various notes on the amendments to Rule 33(a) themselves lay out a trend inviting a liberal construction given the interrogatory's general fall into disfavor as a procedural discovery device. For example, the note to the 1970 Amendment explain: "The mechanics of the operation of Rule 33 are substantially revised by the proposed amendment, with a view to reducing court intervention. There is general agreement that interrogatories spawn a greater percentage of objections and motions than any other discovery device." Fed. R. Civ. P. 33, Advisory Committee's Note to 1970 amendment.

The 1993 Amendments revised Rule 33(a) with the express "purpose of . . . reduc[ing] the frequency and increas[ing] the efficiency of interrogatory practice." Fed. R. Civ. P. 33, Advisory Committee's Note to 1993 amendment. Specifically, Rule 33(a) was revised to "*limit*[] interrogatory practice." *Id.* (emphasis added).

> Because Rule 26(a)(1)-(3) requires disclosure of much of the information previously obtained by this form of discovery, there should be less occasion to use it. Experience in over half of the district courts has confirmed that limitations on the number of interrogatories are useful and manageable. Moreover, because the device can be costly and may be used as a means of harassment, it is desirable to subject its use to the control of the court consistent with the principles stated in Rule 26(b)(2), particularly in multi-party cases where it has not been unusual for the same interrogatory to be propounded to a party by more than one of its adversaries.

*Id.*

This 1993 Amendment was the last time Rule 33(a) has been substantively revised in 20 years and predates the line of cases discussed above in Part B, *supra*. While the Advisory Committee's notes state that "each party is *allowed* to *serve* 25 interrogatories upon any other party," nothing in the note provides an intent to mandate that a given party be ultimately required to *answer* 25 interrogatories nor do the notes admonish a Court to *limit* the amount of interrogatories from the baseline set out from the Rules. *Id.* (emphasis added). Indeed, the

17

opposite. The Advisory Committee's notes recognize multi-party cases may often result in duplicative interrogatory practice thus Courts should take care to allow interrogatory to be limited by the same principles as the general discovery rule, Rule 26(b)(2).

### C. The Order was Not an Abuse of Discretion

This Court's task is not to review the magistrate judge's outcome *de novo*, *i.e.*, make its own independent determination of a controversy afresh, but rather to determine if an abuse of discretion was committed. *See Greene v. WCI Holdings Corp.*, 956 F. Supp. 509, 514 (S.D.N.Y. 1997), *aff'd*, 136 F.3d 313 (2d Cir. 1998). Given the law and authority elucidated above, the Order's application of the common interest doctrine was not an abuse of discretion or otherwise contrary to law. As the law has developed in this Circuit, a trial judge may, in her discretion, constrict the number of interrogatories allowed to be served in multi-party litigations by identifying circumstances when certain nominal parties to an action should be treated as a single "party" for the purposes of Rule 33(a)(1). Martha and Boris contended at the forefront of Rule 33 interrogatory discovery that they have a "common interest" such that they should be considered one party under *Zito*. *See* Gonzalez Ltr. at 1. The Government acknowledged and disputed this common interest argument in a responsive letter on February 9, 2023, *see* ECF 25-6, but it did not further address the merits of the common interest doctrine argument in its motion to compel. *See* Mot. to Compel at 3. Rather, the Government stood by its claims that its underlying theory of liability as to who is a "responsible" person liable for tax assessments under the 26 U.S.C. § 6672 required Martha and Boris to be considered discretely as "parties" for Rule 33(a)(1) purposes because their interests as to avoiding liability were discrete and potentially adverse. *Id.*; *accord* Gov't App. at 3-4 ("Martha's interests in this litigation are different than—even potentially

18

adverse to—Boris's. As a matter of law, Martha and Boris do not share common interests as defendants in this case and thus, cannot be treated as the same defendant"). On appeal to this Court, the Government has only raised issues with the substantive application of the common interest doctrine as it stands.

The Order explicitly acknowledged the Government's liability-based argument (and Boris and Martha's lack of response to it), but ultimately concluded that "under the circumstances presented here, [Boris and Martha] should be treated as one party for purposes of Rule 33(a). There is clearly a common interest shared in light of the allegations of the counterclaims, and their representation by the same attorney is further support." Gonzalez, 2023 WL 3455059, at *5 (citing *McCarthy,* 168 F.R.D. at 450; *Stiles*, 2020 WL 264420, at *4). In doing so, the Order acknowledged other in-Circuit authority found in *Zito*, *Gucci*, and *Energy Holdings,* and the relevant factors those cases considered when applying the common interest doctrine. The Court does not find the Order was an abuse of discretion or a misapplication of the relevant law construing Rule 33(a)(1), i.e., the "common interest" doctrine. The Order is clearly "located within the range of permissible decisions." *Arista,* 604 F.3d. at 117.

## CONCLUSION

This Court is cognizant of the burden of discovery disputes that trial judges regularly face in guiding civil discovery and respects the discretion afforded to trial judges who are closest to the case and the parties to determine in their discretion how interrogatory practice should proceed, and goes no further than necessary to resolve the objection under the "abuse of discretion" standard applied to discovery orders appealed from a magistrate judge. *See Whiting v. Lacara*, 187 F.3d 317, 320 (2d Cir. 1999) ("The trial judge is closest to the parties and the facts, and we are very

19

reluctant to interfere with district judges' management of their very busy dockets."). Accordingly, for the reasons stated above, the Order is **AFFIRMED**.

Dated:	October 27, 2023
	Brooklyn, New York.

							 */s/* Orelia E. Merchant			
							ORELIA E. MERCHANT
							United States District Judge

20