UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
MARTHA GONZALEZ,

    *Plaintiff*,

            v.

UNITED STATES OF AMERICA,

    *Defendant and Counterclaim Plaintiff*,

            v.

MARTHA GONZALEZ; and
BORIS GONZALEZ,

    *Counterclaim Defendants.*
----------------------------------------------------------X

**MEMORANDUM AND ORDER**
2:22-cv-03370 (OEM) (JMW)

ORELIA E. MERCHANT, United States District Judge:

On June 6, 2022, plaintiff Martha Gonzalez filed ("Plaintiff") filed this claim against the United States for refund and abatement of taxes pursuant to 26 U.S.C. § 6672 after the Internal Revenue Service ("IRS") assessed liabilities against her. *See* Complaint ("Compl."), ECF 1. On September 9, 2022, Defendant, the United States ("Defendant", "Counterclaim Plaintiff" or "the Government"), answered and brought counter claims against Plaintiff and her husband, Boris Gonzalez, ("Counterclaim Defendant" or "Boris"), seeking to collect tax liabilities from Boris in the amount of $2,189,132.60 plus statutory additions and interest. *See* Defendant's Answer and Counterclaim ("Def's Countercl."), ECF 15, at PageID 64. Now before the Court is Defendant's Motion for Summary Judgment against Counterclaim Defendant Boris Gonzalez. For the reasons stated below, Defendant's Motion is GRANTED.

# BACKGROUND[1]

### A. Factual Background

This motion arises from the IRS' tax assessments against Camabo's failure to collect, truthfully account for, and pay over the trust fund potion of federal income, FICA, and Medicare taxes withheld from the wages of employees of Camabo, for the quarterly tax periods ending on December 31, 2011, September 30, 2012, December 31, 2012, March 31, 2013, June 30, 2023, September 30, 2013, and December 31, 2013. Def. 56.1, ¶¶ 1-3; Def's Countercl ¶ 53. The issue is whether the Government is entitled to hold Boris Gonzalez personally liable for the outstanding tax liabilities of Camabo.

In June 2011, Boris bought Camabo from his wife and Plaintiff in this action, Martha Gonzalez. Def. 56.1, ¶ 7. Camabo was a bridge painting and cleaning business with its principal office located at 383 Oakley Avenue, Elmont, New York 11003, which also served as Boris' and Martha's residence from at least 2011 through 2014. *Id.* ¶¶ 5-6. Boris served as the company's owner, president, CFO, and COO from this time until the company shuttered after a bankruptcy filing on December 17, 2013. *Id.* ¶¶ 8, 34. In these roles, Boris had authority to hire and fire employees, set salaries, and negotiated the financing of equipment on behalf of the company. *Id.* ¶¶ 9-11. He also had signature authority over multiple Camabo bank accounts, Chase Bank, N.A., Washington Mutual Bank, and TD Bank, N.A. *Id.* ¶ 12.

Boris was responsible for and prepared and printed payroll checks for Camabo employees. *Id.* ¶ 13. He did not maintain a separate bank account for payroll trust funds withheld from these

---

[1] The following facts are taken from Defendant's Local Rule 56.1. All facts herein are undisputed by Plaintiff. *See* Defendant and Counterclaim Plaintiff United States' Local Rule 56.1(a) Statement of Material Facts in Support of Its Motion for Summary Judgment ("Def. 56.1"), ECF 41-1.

employees' paychecks. *Id.* ¶ 14. Boris had authority to sign Camabo's tax returns, and indeed was the only Camabo employee who did so from 2011 through at least 2013. *Id.* ¶ 15. Boris also signed Camabo's Form 941 Quarterly Federal Tax Returns for the periods ending September 30, 2012, December 31, 2012, and March 31, 2013, which showed balances due of $342,756.26, $306,646.22, and $76,452.25 respectively. *Id.* ¶¶ 16-18. He also signed the company's corporate income tax returns. *Id.* ¶¶ 37-38.

Boris made decisions as to how Camabo's funds were used: he paid for personal expenses, client entertainment, and his personal credit card bill for charges incurred on behalf of Camabo. *Id.* ¶¶ 22, 28. From 2011 through at least 2013, he regularly signed checks issued from Camabo's bank accounts, including checks to himself, a company controlled by Plaintiff, his father, Gabriel Gonzalez, and checks to cash which were later endorsed in his father's name as the payee. *Id.* ¶¶ 23-24. Boris also authorized payment from Camabo's JP Morgan Chase Bank account to the New York State Department of Taxation and Finance in the amount of $100,408.81 on February 13, 2013. *Id.* ¶ 25.

In 2013, after discussing Camabo's outstanding payroll taxes with an IRS employee, Boris continued to pay unsecured creditors other than the IRS, including ARS and United Rentals, for items such as gasoline and day-to-day supplies. *Id.* ¶¶ 26-27. From 2011 through 2014, Boris made payments to Camabo's officers and employees, as well as supplies and unions, *id.* ¶¶29-30, 35-39, despite knowing that the IRS held priority claims. *See id.* ¶ 32.

On December 3, 2013, Camabo filed a Chapter 11 bankruptcy petition, which was signed by Boris as President of Camabo, in the United States Bankruptcy Court for the Eastern District of New York. *Id.* ¶ 31. Camabo identified the IRS as a secured creditor on Schedule D and a creditor holding an unsecured priority claim on Schedule E in Camabo's bankruptcy schedules

3

filed on December 17, 2013, signed by Boris under the penalty of perjury. *Id.* ¶ 32. The schedules also identified Boris as codebtor of Camabo with regard to the IRS as a creditor on Schedule H. *Id.* The Statement of Financial Affairs in the bankruptcy schedules listed Camabo's income in the amount of $3,462,208 in 2011, $8,241,518 in 2012, and $6,000,000 in 2013. *Id.* ¶ 33. In addition, the bankruptcy schedules identified that Boris had $91,100 cash on hand or in bank accounts, including $40,000 in an account ending in -6042 and $800 in another one ending in -7210 at JP Morgan Chase Bank, and $50,000 in an account ending in -7274 at Bank of America; $890,000 in accounts receivable; and $252,800 in other personal property. *Id.* ¶ 34.

### B. Procedural History

Plaintiff, Martha Gonzalez, filed this action against the Government on June 7, 2022. The Government answered and filed counterclaims against Plaintiff and Boris Gonzalez, adding him as a Counterclaim Defendant in this action. *See* Def's Countercl. On February 20, 2024, the Government moved for a Pre-Motion Conference regarding its anticipated Motion for Summary Judgment against Boris Gonzalez and submitted supporting 56.1 statements and other evidence. *See* Premotion Conference Letter, ECF 41; Def's 56.1. Plaintiffs did not file an opposition letter and Counter 56.1 statements that, according to this Court's Individual Practice Rules, were due on March 6, 2024. On March 24, 2024, this Court entered an order directing the Counterclaim Defendant to file an opposition letter and 56.1 Statements by April 5, 2024. In its Order, the Court advised it would convert the Pre-Motion Conference letter and 56.1 statement into an unopposed motion for summary judgment in the absence of any response, to which Boris Gonzalez was afforded two opportunities. *See* ECF Order dated March 24, 2024.

4

When the Counterclaim Defendant did respond, counsel for Martha and Boris Gonzalez informed the court that "Having reviewed the relevant submission, . . . Boris will not oppose the United States' motion for summary judgment." *See* ECF 42.  Local Rule 56.1(b) requires the party opposing the motion to "include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried." L.R. 56.1(b).  Therefore, "[a]nonmoving party's failure to respond to a Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible." *T.Y. v. New York City Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009).  "In the typical case, failure to respond results in a grant of summary judgment once the court assures itself that Rule 56's other requirements have been met." *See, e.g., Millus v. D'Angelo*, 224 F.3d 137, 138 (2d Cir. 2000).

Given Boris Gonzalez' failure to file a 56.1 statement or any opposition, this Court deemed the Government's summary judgment motion papers, including the Rule 56.1 Statement, submitted as an unopposed.  *See* ECF Order dated April 19, 2024 (citing *Johnson v. IAC/Interactive Corp.*, 2 F. Supp. 3d 504, 507 (S.D.N.Y. 2014) ("If the opposing party [] fails to controvert a fact set forth in the movant's Rule 56.1 statement, that fact will be deemed admitted pursuant to the local rule.")).

## LEGAL STANDARD

A. Standard of Review

Summary judgement is proper only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *accord Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "An issue of fact is genuine

if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020) (citation omitted). "A fact is material if it might affect the outcome of the suit under governing law." *Id.* The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment, and the district court "is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Id.* (citations omitted).

"In the specific context of tax disputes under 26 U.S. § 6672, summary judgment in favor of the Government is appropriate if there are no genuine disputes 'as to the assessed individual's control of company funds and decisionmaking authority, his or her knowledge of the deflection of company funds to payees other than the IRS, or the existence or reasonableness of his or her belief that the taxes were, in fact, being paid." *Spizz v. United States*, 291 F. Supp. 3d 477, 457 (S.D.N.Y. 2017) (quoting *Winter v. United States*, 196 F.3d 339, 346 (2d Cir. 1999)).

### B. Statutory Background

The Internal Revenue Code, 26 U.S.C. §§ 3102(a) and 3402(a), requires employers to deduct and withhold federal income and social security taxes from their employees' wages. These withheld taxes are known as "trust fund taxes" (or "withholding taxes") because they must be held "in trust for the United States" and paid on a quarterly basis. *See* 26 U.S.C. § 7501(a). If the trust fund taxes are not remitted to the United States, § 6672 provides that,

> [a]ny person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

26 U.S.C. § 6672. An individual may be held personally liable if he or she (1) was a "responsible person" for the collection and payment of the employer's taxes; and (2) willfully failed to comply

with the statute. *Winter v. United States*, 196 F.3d 339, 344 (2d Cir. 1999); *United States v. McCombs*, 30 F.3d 310, 317 (2d Cir. 1994); *Fiataruolo v. United States*, 8 F.3d 930, 938 (2d Cir. 1994); *Hochstein v. United States*, 900 F.2d 543, 546 (2d Cir. 1990). Summary judgment is appropriate where there are no questions as to either of these elements. *United States v. Rem*, 38 F.3d 634, 644 (2d Cir 1994).

"[I]t is the individual challenging the Government's tax assessment under § 6672 who bears the burden of proving the propriety of the Government's assessment." *Spizz*, 291 F. Supp. 3d at 457 (citing *Fiataruolo*, 8 F.3d at 938). It is "well established in the tax law" that IRS tax assessments, determinations of the amount that a taxpayer owes the Federal Government a certain amount of unpaid taxes, are "entitled to a legal presumption of correctness[.]" *United States v. Fior D'Italia, Inc.*, 536 U.S. 238, 242 (2002). "A taxpayer who wishes to challenge the validity of the assessment, moreover, bears the burdens both of production and of persuasion." *McCombs*, 30 F.3d at 318. Under § 6672, "courts have extended the presumption of correctness not merely to the amount of the assessment itself but also to the existence of the two elements, responsibility and willfulness, that underlie the imposition of this type of tax liability." *Id.* (citing *Hochstein v. United States*, 900 F.2d 543, 546 (2d Cir. 1990) (burden of proof is on the taxpayer; IRS is presumed to be correct); *accord Skoczylas v. United States*, 906 F. Supp 2d 161, 167 (E.D.N.Y. 2012) (tax assessment under § 6672 creates prima facie case of liability). Accordingly, the burden of production and persuasion in this case rests on the non-moving party, Boris Gonzalez. The Court considers whether the Government has demonstrated as a matter of law that Boris is unable to raise a genuine dispute of material fact that (1) he was not responsible for the collection and payment of Camabo's trust fund taxes or (2) that he did not willfully fail to remit such taxes.

7

## DISCUSSION

The undisputed facts of this case make it clear that summary judgment against Boris Gonzalez is appropriate. Boris has utterly failed to meet his burden of production and persuasion. The content of the Government's Rule 56.1 Statement has not been challenged and Boris Gonzalez does not oppose the instant motion. As discussed above, this Court has deemed the facts submitted in the Government's Rule 56.1 statement as uncontested and admissible. *See T.Y.*, 584 F.3d at 418 ("A nonmoving party's failure to respond to a Rule 56. 1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible."). Furthermore, the Government's tax assessments submitted as exhibits to its 56.1 Statement are presumed correct.

Accordingly, this Court need only address whether the Government is entitled to judgment as a matter of law pursuant to 26 U.S.C. § 6672. *See* Fed. R. Civ. P. 56.

### A. Boris Gonzalez Was a Responsible Person for Camabo's Finances

Whether an individual is a "responsible person" under § 6672(a) is determined by the extent to which "the individual has significant control over the enterprise's finances." *Winter*, 196 F.3d at 345. "The issue turns on whether, given an individual's role within a company and authority over its financial operations, the individual could have prevented the tax delinquency." *Spizz*, 291 F. Supp. At 459 (citing *Fiataruolo*, 8 F.3d at 939). The individual need not have "absolute authority," but they must possess more than "technical authority or titular designation[]" over those finances. *Id.* Courts consider seven factors when making this determination: whether an individual "(1) is an officer or member of the board of directors, (2) owns shares or possesses an entrepreneurial stake in the company, (3) is active in the management of day-to-day affairs of the company, (4) has the ability to hire and fire employees, (5) makes decisions regarding which, when

8

and in what order outstanding debts or taxes will be paid, (6) exercises control over daily bank accounts and disbursement records, and (7) has check-signing authority." *Fiaturolo*, 8 F.2d at 939. No single factor is dispositive; the determination must be made based on a totality of the circumstances. *Id.*

There is no genuine dispute of fact as to whether Boris Gonzalez was a responsible person under § 6672. Boris was the owner, president, and 90 percent shareholder of Camabo from June 26, 2011 until the company ceased. Def's 56.1, ¶¶ 7-8, 37-38. He was active in the daily management of the company, had the authority to hire and fire employees, and set employee salaries. *Id.* ¶¶ 7, 9-10. Further, he was responsible for preparing and printing those employees' pay checks. *Id.* ¶ 14. Boris Gonzalez was the sole individual who signed Camabo's tax returns, *id.* ¶ 15, specifically the following returns relevant here:

- the Quarterly Federal Tax Return for the period ending September 30, 2012 (showing an unpaid balance of $342,756.26), *id.* ¶ 16;
- the Quarterly Federal Tax Return for the period ending December 31, 20212 (showing an unpaid balance of $306,646.22), *id.* ¶ 17;
- the Quarterly Federal Tax Return for the period ending March 31, 2013 (showing an unpaid balance of $76,452.25), *id.* ¶ 18; and
- the corporate income tax returns. *Id.* ¶¶ 37-38.

Boris exercised control over Camabo's daily bank accounts and disbursement records: he negotiated financing of equipment on behalf of the company and had signature authority over multiple bank accounts. *Id.* ¶¶ 11-12. He used this signature authority to repeatedly issue checks from Camabo's bank accounts for a variety of purposes, including to pay himself. *Id.* ¶¶ 22-25. Based on the totality of the circumstances, it is clear that Boris Gonzalez exercised "significant control over the enterprise's finances" to make him a "responsible person" under § 6672. *Winter*, 196 F.3d at 345; *see Spizz*, 291 F. Supp. 3d at 459 (individual who founded company, owned one-third of the company, had check signing authority was a responsible person, despite assertion that

9

person did not have independent access to the firm's finances); *see also O'Callaghan v. United States*, 943 F. Supp. 320, 325 (S.D.N.Y. 1996) (responsible person despite little involvement in day-to-day operations and no day-to-day control over company's bank accounts).

### B. Boris Gonzalez Willfully Failed to Remit Trust Fund Taxes to the IRS

To be held personally liable under § 6672, a "responsible person" must have willfully failed to ensure that withholding taxes were paid to the IRS. 26 U.S.C. § 6672. Willfulness "need not stem from an evil motive or intent to defraud, but it must amount to more than negligence." *Spizz*, 291 F. Supp. 3d at 461 (quoting *United States v. Rem*, 38 F.3d 634, 643 (2d Cir. 1994)). "A person willfully fails to pay withholding taxes within the meaning of section 6672 when he pays other creditors with knowledge that withholding taxes are due." *Hochstein*, 900 F.3d at 548.[2]

First, it is undisputed that Boris Gonzalez knew that Camabo's obligation to pay trust fund taxes to the IRS. He received letters from the IRS stating that Camabo owed unpaid payroll taxes in 2012, 2013, and 2014. Def's 56.1, ¶¶ 20-21. These letters were addressed to Camabo at 383 Oakley Avenue, Elmont, New York 11003, which was also Boris Gonzalez's personal residence from at least 2011 through 2014. *Id.* ¶¶ 5-6, 20-21. He discussed these unpaid taxes with an IRS employee in 2013, *id.* ¶ 26, and he listed the IRS as an unpaid creditor of Camabo in his bankruptcy filing for the company on December 3, 2013. *Id.* ¶¶ 31-32. Second, Boris knew that the company's funds were being used for other purposes instead. *See Winter*, 196 F.3d at 345. Not only was Boris Gonzalez *aware* that the funds were being used for other purposes, but he *personally authorized* the use of such funds to pay creditors other than the IRS. For example,

---

[2] "For purposes of determining willfulness, an employee to whom the corporate employer owes wages is simply another creditor." *Id.* "[C]ourts have long recognized that payments such as wages and other ordinary business expenses, if paid while trust fund taxes remain outstanding, support a finding of willfulness." *Spizz*, 291 F. Supp. At 462.

10

while Camabo was ignoring its tax liability to the IRS, Boris authorized the payment of funds to himself, his wife, and his father, to pay for client dinners and entertainment, and to pay taxes owed to New York State. Defs' 56.1 ¶ 37-39, 24-25.

Given these undisputed facts, the only reasonable conclusion is that Boris Gonzalez willfully failed to ensure that Camabo's trust fund taxes were paid to the IRS during the relevant periods. Having failed to demonstrate the existence of any genuine issue of material fact, this Court finds that the Government is entitled to judgment as a matter of law on its counterclaim against Boris Gonzalez.

## CONCLUSION

For these reasons, the Government's motion for summary judgment is GRANTED. Specifically, with respect to the United States' counterclaim against Counterclaim Defendant Boris Gonzalez, the Clerk of Court is respectfully directed to enter judgment in favor of the United States of America as follows:

> Judgment in favor of the Counterclaim Plaintiff United States of America and against Counterclaim Defendant Boris Gonzalez in the amount of $2,420,292.38, plus statutory additions from and after February 9, 2024, including interest pursuant to 26 U.S.C §§ 6601, 6621, and 6622, as well as 28 U.S.C. § 1961(c), for the unpaid Trust Fund Recovery Penalties assessed against Boris Gonzalez in regard to the quarterly tax periods ending December 31, 2011; September 30, 2012; December 31, 2012; March 31, 2013; June 30, 2013; September 30, 2013; and December 31, 2013. This judgment shall be made final pursuant to Fed. R. Civ. P. 54(b) because, there is no just reason for delay.

With respect to the Martha Gonzalez's claims against the United States and the United States' counterclaims against Martha Gonzalez, the Court retains jurisdiction over such claims which remain for adjudication.

SO ORDERED.

/s/
ORELIA E. MERCHANT
United States District Judge

Dated: October 15, 2024
      Brooklyn, New York